UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES FIDELITY AND
GUARANTY COMPANY,

                    Plaintiff,

      v.

KAREN ULBRICHT, et al.,

                    Defendants.

CASE NO. C20-0369JLR

ORDER

## I.    INTRODUCTION

This matter comes before the court on the parties' dueling motions to exclude their

opposing party's expert witness.  Defendants PM Northwest, Inc. ("PM Northwest"),

Heide Ulbricht, Karen Ulbricht, and Robert S. Ulbricht (the "Ulbrichts") (collectively,

"Defendants") move to strike the expert opinion of Plaintiff United States Fidelity and

//

//

1   Guaranty Company's ("USF&G")[1] expert, Allan D. Windt.  (Windt Mot. (Dkt. # 68);

2   Windt Reply (Dkt. # 89).)  USF&G opposes the motion.  (Windt Resp. (Dkt. # 78).)

3   USF&G, likewise, moves to exclude the testimony of Defendants' expert witness Charles

4   M. Miller.  (Miller Mot. (Dkt. # 72); Miller Reply (Dkt. # 84).)  Defendants oppose this

5   motion.  (Miller Resp. (Dkt. # 79).)  Having considered the submissions of the parties and

6   the relevant law, the court GRANTS in part and DENIES in part Defendants' motion to

7   strike Mr. Windt's testimony (Dkt. # 68), and STRIKES portions of Mr. Windt's report,

8   as described below.  The court further DENIES USF&G's motion to exclude the

9   testimony of Mr. Miller (Dkt. # 72).[2]

## II.   BACKGROUND

11      This dispute arises out of a personal injury action the Ulbrichts filed in January

12   2018 in King County Superior Court against 18 defendants, including PM Northwest

13   ("the underlying action").  (Compl. (Dkt. # 1) ¶ 9; SAC (Dkt. # 27) ¶ 3.4.)  The

14   underlying action alleged that Robert Ulbricht had contracted mesothelioma as a result of

15   exposure to asbestos while working at an oil refinery in Anacortes, Washington.  (SAC

16   ¶ 3.5.)  Several months later, PM Northwest contacted The Travelers Indemnity

[1] In their motions and briefs, the parties describe Plaintiff as either USF&G (*see generally* Windt Mot.; Windt Resp.) or "Travelers" (*see, e.g.*, Miller Resp. at 9).  For consistency and convenience, the court refers to Plaintiff as "USF&G" throughout this order.

[2] Neither party has requested oral argument (*see* Windt Mot. at 1; Windt Resp. at 1; Miller Mot. at 1; Miller Resp. at 1) and the court finds that oral argument would not be helpful to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4); *see also Tubar v. Clift*, No. C05-1154JCC, 2009 WL 1325952, at *2 (W.D. Wash. May 12, 2009) ("The trial court's gatekeeping role under *Daubert* is satisfied, even without a formal hearing, by the court's probing of the expert's knowledge and experience" (citing *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004))).

1   Company, an affiliate of USF&G, to inquire about the existence of five (5) commercial

2   general liability policies.  (Compl. ¶ 10.)  The policies could not be readily found and a

3   search for the policies—or other evidence of their existence—commenced thereafter,

4   although USF&G contends that PM Northwest initially failed to put it on notice of the

5   urgency of the matter.  (*See id.* ¶ 13-14.)

6        PM Northwest and the Ulbrichts ultimately resolved the underlying action in a

7   settlement and covenant judgment in the amount of $4.5 million, which was to be paid

8   from insurance policies held by PM Northwest.  (*Id.* ¶ 16; SAC ¶ 3.30.)  The Ulbrichts

9   and PM Northwest sought a reasonableness determination in the underlying action, which

10   USF&G opposed.  (Compl. ¶¶ 19-21; SAC ¶ 3.26.)  The King County Superior Court

11   ruled that the judgment was reasonable on December 26, 2018, which was subsequently

12   affirmed on appeal on February 10, 2020.  (Compl. ¶¶ 22-23, 25; SAC ¶¶ 3.30, 3.33.)  On

13   May 1, 2019, USF&G paid the Ulbrichts $2.5 million, which it contends represents the

14   full limits of the five alleged insurance policies.  (Compl. ¶ 24; SAC ¶ 3.32.)  On

15   February 12, 2020, two days after the appeals court affirmed that the settlement was

16   reasonable, the Ulbrichts sent a notice letter to USF&G under the Washington Insurance

17   Fair Conduct Act ("IFCA").  (Compl. ¶ 26; SAC ¶ 3.34.)

18        USF&G initiated this action on March 6, 2020, seeking a declaratory judgment

19   that the total available limits of liability under any policies PM Northwest held with

20   USF&G are $2.5 million; that it had exhausted that amount by its May 1, 2019 payment

21   to the Ulbrichts and had no liability in excess of that amount; and that it neither acted in

22   bad faith nor violated IFCA through its handling of PM Northwest's insurance claim.

1    (Compl. ¶¶ 31-49.)  Defendants subsequently brought suit in federal court, which was

2    consolidated with USF&G's declaratory judgment action.  (9/21/20 Order (Dkt. # 16).)

3    Defendants' suit alleges that USF&G breached various duties, as well as IFCA and the

4    Washington Consumer Protection Act ("WCPA"), by failing to reasonably investigate

5    PM Northwest's claim before denying it coverage.  (SAC ¶¶ 4.1-8.2.)

6          In advance of trial, which is set to begin on February 14, 2022 (Sched. Order (Dkt.

7    # 17)), the parties have disclosed their claims-handling expert witnesses and the reports

8    authored by each expert.  (*See* Ackel Decl. (Dkt. # 69) ¶ 3, Ex. B ("Windt Report");

9    (Brownstein Decl. (Dkt. # 73) ¶ 2, Ex. A ("Miller Report").)  Each party now seeks to

10   exclude or strike the report and testimony of its opposing party's expert witness.  (*See*

11   Windt Mot.; Miller Mot.)

12                              **III.    ANALYSIS**

13         Pursuant to Federal Rule of Evidence 702, "[a] witness who is qualified as an

14   expert by knowledge, skill, experience, training, or education may testify in the form of

15   an opinion or otherwise," provided:

16            (a) the expert's scientific, technical, or other specialized knowledge will help
             the trier of fact to understand the evidence or to determine a fact in issue;
17            (b) the testimony is based on sufficient facts or data;
             (c) the testimony is the product of reliable principles and methods; and
18            (d) the expert has reliably applied the principles and methods to the facts of
             the case.
19
20   Fed. R. Evid. 702.  "Before admitting expert testimony into evidence, the district court

21   must perform a 'gatekeeping role' of ensuring that the testimony is both 'relevant' and

22   'reliable' under Federal Rule of Evidence 702."  *United States v. Ruvalcaba-Garcia*, 923

F.3d 1183, 1188 (9th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)).  "Relevancy simply requires that 'the evidence logically advance a material aspect of the party's case.'"  *Id.* (quoting *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (citation and internal alterations omitted)).  Reliability "requires that the expert's testimony have 'a reliable basis in the knowledge and experience of the relevant discipline.'"  *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999)).  Where the testimony concerns "non-scientific" issues, the reliability inquiry "'depends heavily on the *knowledge and experience* of the expert, rather than upon scientific foundations.'"  *Hangarter*, 373 F.3d at 1017 (quoting *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (emphasis added in *Hangarter*)).

The parties have each moved the court to exclude the testimony of their opponent's claims-handling expert witness.  The court begins by considering Defendants' motion before turning to its analysis of USF&G's motion.

## A.      Defendants' Motion to Strike USF&G's Expert Witness Allan D. Windt

Defendants urge the court to "strike [Mr.] Windt as an expert and preclude his testimony at trial because" his report (1) "fails to set out any applicable industry standards and thus . . . lacks a reliable basis"; and (2) is comprised of analysis "directed at his legal conclusions on the ultimate issue, *i.e.*, whether or not USF&G acted reasonably."  (Windt Mot. at 12.)  The court first addresses Mr. Windt's qualifications to serve as an expert witness before turning to consider the relevance and reliability of his proffered testimony and whether he impermissibly opines on the ultimate issues in the

1   case.

2     <u>1.</u>  <u>Mr. Windt's Qualifications</u>

3     In contesting the reliability of Mr. Windt's testimony, Defendants do not directly

4   argue that he lacks the requisite qualifications to serve as an expert witness.  (*See*

5   *generally* Windt. Mot.)  They do, however, characterize him as "an attorney with limited

6   experience advising insurance clients on the handling [of] insurance coverage claims"

7   and having "no professional insurance experience as an adjustor, appraiser" or working in

8   "any other direct industry" capacity.  (*Id.* at 2.)  The record, however, contains evidence

9   of Mr. Windt's substantial experience adjusting claims in a variety of jurisdictions, and

10  drafting insurance policies for insurance companies.  (*See* Ackel Decl. ¶ 2, Ex. A ("Windt

11  CV") at 2.)  He is also "a prominent insurance law commentator," *Hartford Fire Ins. Co.*

12  *v. Leahy*, 774 F. Supp. 2d 1104, 1111 (W.D. Wash. 2011), who has lectured and

13  published extensively on the subject of insurance claim adjudication.  (*See* Windt CV at

14  1); *see also* Allan D. Windt, Insurance Claims & Disputes, Representation of Insurers and

15  Insureds (6th ed. 2013 & Supp. 2021).

16    Accordingly, the court finds that Mr. Windt is qualified, based on his knowledge

17  and experience, to give relevant and reliable expert testimony.  *Hangarter*, 373 F.3d at

18  1018 (affirming that a district court's "probing" of an expert's "knowledge and

19  experience was sufficient to satisfy its gatekeeping role under *Daubert*").  However, even

20  if Mr. Windt has the "knowledge and experience" to offer relevant and reliable expert

21  testimony, *Hangarter*, 373 F.3d at 1017 (quotation marks and emphasis omitted), the

22  court must further evaluate whether he is able to do so in this case.

1          2.      The Relevance of Mr. Windt's Proffered Testimony

2          Defendants do not address or dispute the relevance of Mr. Windt's proffered

3   testimony (*see generally* Windt. Mot.) but the court must, nevertheless, consider the issue

4   as part of its "gatekeeping role." *Ruvalcaba-Garcia*, 923 F.3d at 1188 (citing *Daubert*,

5   509 U.S. at 597).  USF&G intends to have Mr. Windt opine at trial, as he has in prior

6   cases, "on issues of coverage and duties to settle, defend and indemnify."  (*See* Windt

7   Report at 2; Windt Resp. at 3.)  Those topics are squarely at issue in this case.  Thus,

8   because Mr. Windt's testimony on those subjects "logically advance[s] a material aspect"

9   of USF&G's case, the court finds that Mr. Windt's proffered testimony is relevant.

10  *Ruvalcaba-Garcia*, 923 F.3d at 1188.

11         3.      The Reliability of Mr. Windt's Testimony

12         The focus of Defendants' argument is that Mr. Windt has not provided a basis for

13  finding that he will offer reliable testimony because he "fails to set out any applicable

14  industry standards" in his report and, instead, offers only "legal conclusions on the

15  ultimate issue, *i.e.*, whether or not USF&G acted reasonably."  (Windt Mot. at 12.)  The

16  court disagrees that Mr. Windt has totally failed to identify applicable industry standards

17  in his report.  For instance, he explains, that, "in a typical case"—where the policy

18  document can be located—an insurer will determine "whether it has the legal right to

19  deny coverage . . . by considering the policy language, rules of construction, analogous

20  case law interpreting the same or similar policy language, and any relevant statutes."

21  (Windt Report ¶ 5.)  He then contrasts this with an atypical case, like this one, where the

22  policy document cannot be found.  (*Id.* ¶ 6.)  In such a case, Mr. Windt testifies, an

1  insurer would "first consider[] who had the burden of proving that a policy existed and

2  what the terms and conditions of the policy would have been."  (*Id.*)  Later, he testifies

3  that "it is sometimes possible to use secondary evidence to figure out what the policy

4  stated without finding the policy itself."  (*Id.* ¶ 10.)

5      Testimony on the applicable industry standards is permitted by the Federal Rules

6  of Evidence and, if offered by Mr. Windt at trial, the court finds that such testimony

7  would be relevant and reliable based on his knowledge and experience.  *See Ledcor*

8  *Indus. (USA) Inc. v. Virginia Sur. Co.*, No. C09-1807RSM, 2012 WL 254251, at *2

9  (W.D. Wash. Jan. 26, 2012) (permitting testimony "as to whether Defendant complied

10  with industry standards on the issue of bad faith").

11      4.   Ultimate Issue Testimony

12      The court agrees with Defendants, however, that Mr. Windt opines elsewhere in

13  his report on the ultimate issue of USF&G's reasonableness, or that he otherwise testifies

14  on the applicable law.  (Windt Mot. at 12.)  Although Federal Rule of Evidence 704

15  permits opinion testimony that "embraces an ultimate issue," Fed. R. Evid. 704(a), the

16  Ninth Circuit has "repeatedly affirmed" that an expert cannot offer "'an opinion on an

17  ultimate issue of law,'" *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017)

18  (quoting *Hangarter*, 373 F.3d at 1016).  Thus, "[w]hile an expert witness may testify that

19  an insurer deviated from industry standards on the issue of bad faith, he may not reach an

20  actual legal conclusion that the insurer did so."  *Ledcor Indus.*, 2012 WL 254251, at *2.

21  Accordingly, expert witnesses have been permitted to "discuss the industry standards and

22  whether [the insurer's] actions conformed with those standards," but are prohibited from

1  opining "on the reasonableness" of the insurer's actions in denying coverage where the

2  extra-contractual claim at issue "rests on the question of whether [d]efendant acted

3  reasonably." *Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862BJR, 2021 WL

4  717540, at *3-4 (W.D. Wash. Feb. 24, 2021).

5        At various points, Mr. Windt offers this sort of prohibited opinion testimony.  For

6  instance, he organizes his opinions under headers asserting that (1) "it was reasonable for

7  USF&G to not provide PM Northwest a defense in April 2018" (Windt. Report at 3); (2)

8  "it was reasonable for USF&G to provide PM Northwest a defense after USF&G

9  received the certificates of insurance on July 10, 2018" (*id.* at 4); and (3) "USF&G's

10  attempt to locate the policies was reasonable" (*id.* at 6).  And his discussion of each broad

11  opinion contains further assertions about the reasonableness of USF&G's conduct:

12
13  - "It is my opinion that it was reasonable for USF&G to conclude that the burden of proof was on the insured."  (*Id.* ¶ 6.)

14  - "Necessarily, therefore it was reasonable for USF&G not to afford coverage prior to July 9."  (*Id.* ¶ 7.)

15
16
17  - "In connection with writing my book and updating the book, I have read every reported insurance case in the country back to the 1940s, and I do not believe that any court in the country has ever held, when addressing the 'potential' rule, that it is enough that there is a potential that policy provisions might exist that fit the facts."  (*Id.* ¶ 12.)

18
19  - "I am, however, aware of cases holding, consistent with USF&G's conduct in this case, that an insurer cannot have a duty to defend unless the insured has, first, proven the terms of the missing policy."  (*Id.* ¶ 12 n.2.)

20
21  - "The fact that it apparently also did not occur to the USF&G employees was understandable and reasonable, whether or not it proves to have been a mistake."  (*Id.* ¶ 16.)

22  //

ORDER - 9

- The fact that USF&G was unsuccessful does not mean that USF&G's investigation was not reasonable.  In my opinion, it was reasonable.  Moreover, even if one were to believe that USF&G's investigation had been negligent, that would not mean that USF&G's investigation constituted bad faith.  (*Id.* ¶ 17.)

- "Summarizing, for the combination of three reasons, USF&G's policy search was reasonable." (*Id.* ¶ 20.)

- "I am unaware of any reason to conclude that Ms. Bemeche could not, at that time, reasonably have so believed." (*Id.*)

- "I am unaware of any reason to conclude that those actions were unreasonable." (*Id.* ¶ 21.)

- "The investigation by and through Ms. Corson and Ms. Bowers, beginning in August and ending on September 7, was reasonable." (*Id.* ¶ 22.)

- "In short, at every stage, the conduct of the USF&G's employees was reasonable." (*Id.* ¶ 25.)

- "It is always true, however, when a mistake is made by an employee, that a better employee would not have made the same mistake.  That does not mean that the employer is always guilty of bad faith." (*Id.*)

- "If PM Northwest is contending that USF&G acted unreasonably because it had had a duty to settle for the lower amount that the plaintiff had been willing to accept, I disagree.  To begin with, since as discussed above, it is reasonable to conclude that USF&G did not have a duty to defend, it is reasonable to conclude that USF&G did not have a duty to settle (which duty is governed by a more demanding test).  Moreover, based upon the facts that USF&G knew or should have known on 8/2/18, it would have been reasonable for USF&G to believe that it did not have a duty to fund a settlement." (*Id.* ¶ 27.)

- "Finally, with regard to the fact that USF&G reserved the right to seek reimbursement if the Court of Appeals found that the stipulated judgment was unreasonable, that was certainly a reasonable position to take at the time.  Note, too, that as discussed earlier in this report, even if it had been undisputed that the amount of the settlement was reasonable, USF&G appears to have overpaid.  As for the issue of USF&G paying post-judgment interest in an amount in excess of the policy limit, since the policy documents that were found do not contain a provision obligating USF&G to make a payment in

excess of the policy limit, such a payment was not undisputedly owed.  Note,
too, that as discussed in this report, it is reasonable to conclude that coverage
did not exist for the judgment; as a result, for that additional reason, it is
reasonable to conclude that coverage did not exist for the interest on the
judgment."  (*Id.* ¶ 28.)

These statements either seek to "instruct the jury as to the applicable law," or to offer "an opinion on an ultimate issue of law."  *Hangarter*, 373 F.3d at 1016; *Liu*, 2021 WL 717540, at *3-4.  Neither form of testimony is permitted and so the court STRIKES the portions of Mr. Windt's report that are identified above.

In sum, the court finds that Mr. Windt is qualified to offer relevant and reliable expert testimony on applicable insurance industry standards at trial.  Accordingly, the court GRANTS in part and DENIES in part Defendants' motion to strike Mr. Windt's testimony, and STRIKES the offending portions of Mr. Windt's report, as set forth above.

**B.     USF&G's Motion to Exclude Testimony of Charles M. Miller**

USF&G asks the court to exclude the testimony of Defendants' expert Charles M. Miller because:  (1) his testimony on industry standards will not assist the jury because he fails to address the standard of care at issue in this matter (Miller Mot. at 6-7); (2) his "failure to consider countervailing evidence renders his report unreliable" (*id.* at 7); (3) he draws conclusions on "primary facts" that "the jury is capable of comprehending" without expert testimony (*id.* at 8); and (4) his "report provides a running commentary on the chronology of events," which attempts to usurp the fact-finding role of the jury (*id.* at 8-9).

//

1    The court first considers whether Mr. Miller is qualified to provide expert

2    testimony and then, finding that he is qualified, turns to consider USF&G's arguments

3    that his testimony should nevertheless be excluded.

4        1.    Mr. Miller's Qualifications

5        As USF&G acknowledges, Mr. Miller "is a practicing attorney with decades of

6    experience." (Miller Mot. at 4 (citing Brownstein Decl. ¶ 3, Ex. B ("Miller CV")).)  In

7    addition to his legal experience, he also has approximately twenty years of experience in

8    the insurance industry—including as an adjuster (*see id.* at 2-3)—and has taught and

9    published on the subject of bad faith claims and other topics relevant to this matter (*id.* at

10   4-9).  Moreover, Mr. Miller "has been retained in over 200 cases" and "qualified as an

11   expert on insurance industry claims handling standards and practices" on numerous

12   occasions.  (*See id.* at 1-2.)  His opinions have also been favorably cited by at least one

13   federal court in this circuit.  *See, e.g.*, *Gerawan Farming Partners, Inc. v. Westchester*

14   *Surplus Lines Ins. Co.*, No. CIVF 05-1186 AWI DLB, 2008 WL 80711, at *14 (E.D. Cal.

15   Jan. 4, 2008).

16       Although USF&G did not dispute Mr. Miller's qualification as an expert witness

17   in its motion (*see* Miller Mot. at 2), it argues on reply that Mr. Miller is unqualified based

18   on his apparent lack of experience with cases specifically involving a lost policy (Miller

19   Reply at 1-2).  USF&G cites no cases in support of its proposal to define Mr. Miller's

20   prior experience in the insurance industry, including on issues of bad faith, so narrowly.

21   (*See id.*)  And doing so would seemingly conflict with the Ninth Circuit's guidance that

22   expert witnesses are qualified "to give 'expert' testimony on the practices and norms of

ORDER - 12

1    insurance companies in the context of a bad faith claim" where they possess "at least the

2    *minimal foundation* of knowledge, skill, and experience required."  *See Hangarter*, 373

3    F.3d at 1016 (emphasis in original) (quoting *Thomas v. Newton Intern. Enters.*, 42 F.3d

4    1266, 1269 (9th Cir. 1994)); *see also In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 551

5    (C.D. Cal. 2014) ("Prior experience need not consist of prior expert witness testimony on

6    the same issue.").  Notwithstanding his apparent lack of experience with missing policy

7    cases, Mr. Miller has otherwise demonstrated that he has "at least the *minimal*

8    *foundation*" necessary to offer relevant and reliable expert testimony on the issues

9    presented in this matter.  *Hangarter*, 373 F.3d at 1016 (emphasis in original).

10                   2.    Mr. Miller's Testimony on Industry Standards

11            USF&G next argues that Mr. Miller's testimony on industry standards is "not

12    relevant to this case, is prejudicial, and will confuse (rather than assist) the jury" because

13    he fails to "address the only standard of care" at issue in this case.  (Miller Mot. at 2.)

14    However, in his report, Mr. Miller testifies as to the industry standard for, among other

15    things, conducting a claim investigation in good faith (Miller Report at 16); locating old

16    or lost policies (*id.* at 21-28); taking statements in the course of a claim investigation (*id.*

17    at 66); the insurer's obligation to discuss the implications of an excess verdict with the

18    insured (*id.* at 71); and an insurer's obligation to defend the insured in litigation (*id.* at

19    79).  Mr. Miller also opines throughout his report on whether USF&G's conduct was

20    consistent with the industry standards he identifies.  (*See generally id.*)

21            This testimony is directly related to Defendants' second amended complaint,

22    which alleges that USF&G's "denial of coverage without first conducting a reasonable

1   investigation constitutes bad faith conduct." (SAC ¶ 5.5.) It thus "logically advance[s] a

2   material aspect" of Defendants' case and is relevant and admissible. *Ruvalcaba-Garcia*,

3   923 F.3d at 1188.

4            3.     Mr. Miller's Alleged Failure to Consider "Countervailing Evidence"

5            USF&G next argues that Mr. Miller's "failure to consider countervailing evidence

6   renders his report unreliable." (Miller Mot. at 7.) For instance, USF&G faults Mr. Miller

7   for noting "only USF&G's actions, without any consideration of PM Northwest's

8   repeated delays and failures to provide information." (*Id.*) As Defendants point out,

9   however, Mr. Miller does discuss PM Northwest's interactions with USF&G at various

10  points in his report (*see* Miller Resp. at 7-8 (collecting examples)), and also directly

11  responds in his supplemental report to USF&G's argument "that P.M. Northwest did not

12  cooperate with [USF&G's] investigation because P.M. Northwest did not timely provide

13  [USF&G] with the pleadings in the Ulbricht action" (*see* Brownstein Decl. ¶ 5, Ex. D

14  ("Suppl. Miller Report") at 12-13).

15           USF&G argues that this amounts to "paper[ing] over PM Northwest's repeated

16  failures and delays to provide information" to USF&G. (Miller Reply at 3.) But if

17  USF&G perceives "weakness in the underpinnings of [Mr. Miller's] opinions," it should

18  plan to expose any such weaknesses through cross-examination and to argue that, as a

19  result, Mr. Miller's testimony should have less weight and credibility. *Bergen v. F/V St.*

20  *Patrick*, 816 F.2d 1345, 1352 (9th Cir. 1987) (quoting *Polk v. Ford Motor Co.*, 529 F.2d

21  259, 271 (8th Cir. 1976), *opinion modified on reh'g*, 866 F.2d 318 (9th Cir. 1989).

22  Where, as here, the court has determined that Mr. Miller is qualified to offer relevant and

1    reliable expert testimony, a factual dispute of this sort is not a proper basis for excluding

2    his testimony altogether.  *See Daubert*, 509 U.S. at 596 ("[C]ross-examination,

3    presentation of contrary evidence, and careful instruction on the burden of proof are the

4    traditional and appropriate means of attacking shaky but admissible evidence.").

5        4.    Mr. Miller's Testimony on "Primary Facts" Within the Jury's Common
              Knowledge

6        USF&G further argues that Mr. Miller draws conclusions on "primary facts" that

7    "the jury is capable of comprehending" without expert testimony.  (Miller Mot. at 8.)

8    Specifically, USF&G takes issue with Mr. Miller's testimony that "[g]ood faith claim

9    practices require that [an] investigation be objective, thorough, and timely." (*See* Miller

10   Report at 16 (quoting James J. Markham, et al., The Claims Environment 29 (1993));

11   Miller Mot. at 7.)  USF&G asserts that it is "doubtful" that "the jury requires [Mr.]

12   Miller's special knowledge to understand that an investigation should be 'objective' or

13   'timely,'" as these concepts are, according to USF&G, matters within the jury's

14   "common knowledge."  (Miller Mot. at 7.)

15       Although "[e]xpert testimony is inadmissible if it concerns factual issues within

16   the knowledge and experience of ordinary lay people because it would not assist the trier

17   of fact in analyzing the evidence," *Santiago Salas v. PPG Architectural Finishes, Inc.*,

18   No. C17-1787RSM, 2019 WL 399029, at *1 (W.D. Wash. Jan. 31, 2019), the Ninth

19   Circuit has cautioned that courts should not "overstate the scope of the average juror's

20   common understanding and knowledge," *United States v. Finley*, 301 F.3d 1000, 1013

21   (9th Cir. 2002.  Moreover, expert testimony need only provide "appreciable help" to the

22

ORDER - 15

1    jury to be admissible.  *See United States v. Gwaltney*, 790 F.2d 1378, 1381 (9th Cir.

2    1986).  Mr. Miller's testimony on insurance industry standards of care is certainly

3    capable of providing such help to the jury in this case and, indeed, courts routinely permit

4    expert witnesses to provide testimony of the sort contained in Mr. Miller's report.  *See*

5    *Hangarter*, 373 F.3d at 1016; *see also Ledcor Indus.*, 2012 WL 254251, at *2.

6    Accordingly, while the jury may understand the meaning of "objective" or "timely" in

7    common usage, the court will not presume they understand those terms as they are used

8    by the insurance industry.  Because Mr. Miller's testimony is aimed at educating the jury

9    in that manner, the court finds his testimony to be relevant and reliable.

10   *Ruvalcaba-Garcia*, 923 F.3d at 1188; *Finley*, 301 F.3d at 1013.

11       5.    Mr. Miller's "Running Commentary on the Chronology of Events"

12       Finally, USF&G asks the court to exclude Mr. Miller's testimony because it

13   contains "a running commentary on the chronology of events," which attempts to usurp

14   the fact-finding role of the jury.  (Miller Mot. at 8-9.)  It is plain that both expert reports

15   offer a fair amount of factual recitation.  (*See, e.g.*, Miller Report at 18-21, 28-32; Windt

16   Report ¶ 19 ("Turning to the facts of this case . . . .").)  However, the court has found that

17   both experts are qualified to offer relevant and reliable expert testimony and does not find

18   the presence of some surplus testimony to be a basis for excluding their expert testimony

19   altogether.[3]

20

21       _____

       [3] Indeed, the court recognizes that both Mr. Miller and Mr. Windt may need to discuss
     the facts of this case in order to provide relevant context for their expert opinion testimony.  It
     cautions both experts, however, against doing so excessively or drawing legal conclusions from
22   those facts, *Hangarter*, 373 F.3d at 1016.

1        Because the court finds that Mr. Miller is qualified to offer relevant and reliable

2    expert testimony on applicable insurance industry standards, USF&G's motion to exclude

3    his testimony is DENIED.

4                              IV.    CONCLUSION

5        For the reasons given above, the court GRANTS in part and DENIES in part

6    Defendants' motion to strike the testimony of Mr. Windt (Dkt. # 68), and STRIKES those

7    portions of Mr. Windt's report identified in this order.  The court further DENIES

8    USF&G's motion to exclude the testimony of Mr. Miller (Dkt. # 72).

9        Dated this 21st day of December, 2021.

10

11   _____

12   JAMES L. ROBART
     United States District Judge

13

14

15

16

17

18

19

20

21

22